NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**NATIONAL OILWELL VARCO, L.P.,**
*Plaintiff-Appellant*

v.

**OMRON OILFIELD & MARINE, INC.,**
*Defendant-Appellee*

_____

2015-1406

_____

Appeal from the United States District Court for the Western District of Texas in No. 1:12-cv-00773-SS, Judge Sam Sparks.

_____

Decided: January 25, 2017

_____

JOHN WESLEY RALEY III, Raley & Bowick, LLP, Houston, TX, argued for plaintiff-appellant. Also represented by ROBERT MCGEE BOWICK, JR., BRADFORD TURNER LANEY.

MATTHEW B. LOWRIE, Foley & Lardner LLP, Boston, MA, argued for defendant-appellee. Also represented by KIMBERLY KRISTIN DODD, Milwaukee, WI.

_____

Before MOORE, CHEN, and HUGHES, *Circuit Judges*.

CHEN, *Circuit Judge*.

Plaintiff National Oilwell Varco, L.P. (NOV) filed this patent case alleging that Defendant Omron Oilfield and Marine, Inc. (Omron) infringed claims 11 and 14 of U.S. Patent No. 5,474,142 ('142 Patent). Omron moved to dismiss the complaint and, in the alternative, for summary judgment of invalidity and noninfringement. The district court granted Omron's motion to dismiss, with prejudice, finding that NOV lacked standing to assert the '142 Patent, and awarded attorney fees to Omron based on the exceptional nature of NOV's litigation conduct. It also granted Omron's alternative motion for summary judgment of invalidity and noninfringement.

We affirm, in part, and vacate, in part. The parties agree that this case turns on the proper reading of a particular asset transfer agreement between two subsidiaries, one of them being NOV. We agree with the district court that NOV lacks standing to assert the '142 Patent because the agreement in question did not transfer the rights to the '142 Patent to NOV. We find no abuse of discretion in the district court's dismissal of this case, with prejudice, and the award of attorney fees. We vacate the district court's grant of Omron's motion for summary judgment of invalidity and noninfringement because the district court had no jurisdiction to rule on the merits after dismissing this case for lack of standing.

BACKGROUND

Bobbie Bowden is the named inventor on the '142 Patent. According to the U.S. Patent & Trademark Office's (USPTO) records, the '142 Patent was assigned twice since its issuance on December 12, 1995. Bowden assigned the '142 Patent to Wildcat Services, L.P., on Octo-

ber 9, 2001, and Wildcat Services, L.P. assigned the '142 Patent to MD/Totco, a Division of Varco, L.P.,[1] on June 30, 2004. The USPTO's records show no subsequent assignment to NOV.

After NOV filed suit against Omron asserting infringement of the '142 Patent, Omron issued an interrogatory to NOV on NOV's standing to assert the '142 Patent. NOV responded that it purchased the '142 Patent from Varco, L.P., pursuant to an Asset Contribution Agreement (ACA)[2] dated January 1, 2006. NOV stated that documents sufficient to substantiate this transfer would be produced, including asset purchase agreements and assignment documents. NOV, however, refused to produce the ACA, and it instead produced only a document entitled, "Assistant Secretary's Certificate." Omron sought production of the ACA because the Assistant Secretary's Certificate was not an actual assignment and assigned only "physical assets." NOV refused to produce the ACA, stating:

> The document is not relevant to any claim or defense in this lawsuit. The Secretary's Certificate shows that all assets of Varco, L.P. were sold to National Oilwell including the '142 Patent. The Asset Contribution Agreement would be cumulative and is not needed.

J.A. 4. Omron, in response, filed a motion to dismiss, arguing that (1) NOV refused to produce the ACA, (2) the

---

[1] NOV and Varco, L.P. are separate subsidiaries of one parent company, National Oilwell Varco, Inc.

[2] Although the ACA defines the purchaser as National Oilwell, L.P., NOV asserts that National Oilwell, L.P. changed its name to National Oilwell Varco, L.P. on December 22, 2005 or January 26, 2006. The record is unclear on which of these two dates is correct.

Assistant Secretary's Certificate could not establish NOV's standing, and (3) NOV's standing position was inconsistent with positions taken in other infringement litigations relating to the '142 Patent that Varco, L.P.—not NOV—owned the '142 Patent.

In response to Omron's motion to dismiss, NOV produced the ACA. The district court denied the motion in a summary order, without prejudice to re-filing it at a later date. After reviewing the ACA, Omron refiled its motion to dismiss, arguing that (1) the ACA was not a present assignment of assets, (2) even if the ACA were a present assignment, the ACA includes only "physical assets," which would exclude patents, and (3) even if the ACA were a present assignment and patents could be physical assets, the ACA did not cover the '142 Patent.

The district court agreed with Omron, finding that NOV could not prove ownership of the '142 Patent as of the filing date of this case, and dismissed the case, with prejudice, for lack of standing. It also granted Omron's motion for summary judgment of invalidity and noninfringement. Finally, it granted in part Omron's motion for attorney fees, finding that NOV's refusal to produce the ACA and NOV's litigation conduct was exceptionally unreasonable.

## DISCUSSION

### I. Standard of Review

"Standing is a jurisdictional issue that implicates the case-or-controversy requirement of Article III." *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016). "We review de novo a district court's determination of standing." *Id.* at 1291. "In determining whether a dismissal should have been with or without prejudice, this court applies the law of the pertinent regional circuit." *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002). The Fifth Circuit "review[s] the

district court's decision to grant a motion to dismiss with or without prejudice only for abuse of discretion." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 215 (5th Cir. 2009). We review a district court's decision to award attorney fees for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1749 (2014).

## II. Standing

We begin with standing. "Standing to sue is a threshold requirement in every federal action." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005). "Standing must be present at the time the suit is brought." *Id.* at 975–76. "The party bringing the action bears the burden of establishing that it has standing." *Id.* at 976.

"Before a court may exercise jurisdiction over a patent infringement action, it must be satisfied that, 'in addition to Article III standing, the plaintiff also possesse[s] standing as defined by § 281 of the Patent Act.'" *Drone Techs.*, 838 F.3d at 1292 (quoting *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015)). "Under § 281, a *patentee* shall have remedy by civil action for infringement of his patent." *Id.* (internal quotation marks omitted). "A patentee is not limited to the person to whom the patent issued, but also includes successors in title to the patentee." *Id.* (internal quotation marks omitted). "A party may become the successor in title to the original patentee by assignment . . . and then may sue for infringement in its own name." *Id.* "Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." 35 U.S.C. § 261; *see also Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009) ("The Federal Patent Act requires that all assignments of patent interest be in writing.").

The district court properly focused its attention on the ACA. The ACA describes Varco L.P.'s "desire[]" and "agreement" to contribute assets to a "Partnership" de-

6                           NOV v. OMRON OILFIELD & MARINE, INC.

fined as National Oilwell, L.P.[3] The ACA provides, in relevant part:

> WHEREAS, Contributor desires to contribute all of its physical assets, including but not limited to those assets generally described in Exhibit A (the "Property"), excluding any capital or common stock of subsidiaries or owned companies.
>
> . . . .
>
> 1.1 Agreement to Contribute Property and Issue Partnership Interest. For and in consideration of the mutual benefits enjoyed by one another under this Agreement, Contributor agrees to transfer and convey or assign all of Contributor's right, title, and interest in and to the Property to Partnership, and Partnership agrees to accept the contribution and conveyance of the Property and, in exchange therefore, to issue a limited partnership interest in Partnership to the Contributor, pursuant to the terms and conditions set forth in this Agreement.
>
> 1.2 Conveyance of the Property. Concurrently with the execution of this Agreement, Contributor shall convey, assign, and transfer the Property to Partnership, subject only to the liens, encumbrances, security interests, restrictions, and claims of public record or referenced on Exhibit A. Contributor shall execute and deliver any and all documents or instruments as may be required, or which may be reasonably requested, by Partnership in order to effect and memorialize such conveyance, assignment, and transfer.

---

[3] As noted, National Oilwell, L.P. was purportedly renamed to NOV in either December 2005 or January 2006.

NOV v. OMRON OILFIELD & MARINE, INC.                              7

J.A. 3906.  The ACA contains no reference to patents except within Exhibit A.  Exhibit A is a lengthy spreadsheet with columns corresponding to various divisions of Varco, L.P and rows corresponding to various assets, liabilities, equities, and revenues.  The only entry related to patents is a row titled "Patents – Patents."  J.A. 9.  Every column in this row has an entry of "0" except for a division of Varco, L.P. known as Varco LP Brandt, which has an entry of "129,647."  J.A. 9, 15.

The district court held that the ACA represented merely a promise by Varco, L.P. to assign rights in the future.  It also held that even if the ACA were a present assignment, the ACA covered only "physical assets," which did not include the '142 Patent because patents are not physical assets.  It finally held that even if the ACA were a present transfer of assets that included patents, the ACA did not cover the '142 Patent because the Exhibit A spreadsheet to the ACA discloses a "0" for the entry where the row for patents intersects with the column for MD/Totco, the division of Varco, L.P. that purportedly assigned the '142 Patent to NOV.

Because we agree with the district court that the ACA did not transfer the '142 Patent from the MD/Totco division of Varco, L.P. to NOV, we conclude that the district court properly dismissed this case for lack of standing.

As an initial issue, we first note that "state law governs the interpretation of contracts generally."  *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008).  The ACA provides that "the substantive internal laws of the State of Delaware" control.  J.A. 13.  Under Delaware law, we "review[] the trial court's interpretation of contract terms de novo."  *BLGH Holdings LLC v. enXco LFG Holding, LLC*, 41 A.3d 410, 414 (Del. 2012).  When "the plain language of a contract is unambiguous i.e., fairly or reasonably susceptible to only one interpretation, we construe the contract in accordance

with that plain meaning and will not resort to extrinsic evidence to determine the parties' intentions." *Id.*

The district court correctly interpreted the ACA to find that its plain meaning did not include transferring the '142 Patent from Varco, L.P. to NOV because the Exhibit A spreadsheet shows a "0" where the patents row intersects with the MD/Totco column. J.A. 14–15. NOV does not dispute that MD/Totco owned the '142 Patent before the execution of the ACA. NOV only argues that Exhibit A was not an exhaustive list of assets, but simply an example of the types of assets owned by Varco, L.P. and transferred to NOV.

We agree with the district court that, even if Exhibit A discloses merely an example of the types of transferred assets, NOV does not account for the "0" entry for MD/Totco's patents, showing that no patents were transferred from MD/Totco to NOV through the ACA. We also agree that the district court correctly rejected NOV's argument that the numerical values in Exhibit A represent revenue from assets, rather than the asset values, because other non-revenue-generating entries in Exhibit A contain non-zero entries—including, *e.g.*, $8.7 million for "Goodwill" and $44.5 million for "Furniture and Fixtures"—and a separate section of Exhibit A is set aside for revenues. J.A. 16.

We affirm the district court's conclusion that NOV lacks standing to assert the '142 Patent because a plain reading of the ACA reveals that it did not transfer the '142 Patent from MD/Totco to NOV. Because we affirm on this basis, we do not reach the district court's alternate findings that the ACA was not a present assignment or that patents are not physical assets.

### III. Dismissal with Prejudice

"Ordinarily, dismissal for lack of standing is without prejudice." *Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*,

357 F.3d 1266, 1269 (Fed. Cir. 2004). "On occasion, however, a dismissal with prejudice is appropriate, especially where 'it [is] plainly unlikely that the plaintiff [will be] able to cure the standing problem.'" *Id.* "[I]t is for the district court to complete these inquiries, and then determine, in its discretion, whether to dismiss the case with or without prejudice." *Id.* at 1270.

The district court dismissed this case with prejudice because NOV did not present a consistent picture of ownership of the '142 Patent throughout (1) the USPTO records, (2) this case, and (3) three separate previous litigations including a case against Pason Systems USA Corp. (the Pason case), a case in Canada (the Canadian case), and a case against Auto-Dril (the Auto-Dril case). In the Pason case and the Canadian case, Varco, L.P. alleged that it owned the '142 Patent or the Canadian counterpart to the '142 patent, even after the execution of the ACA, and in the Auto-Dril case, NOV settled when Auto-Dril presented the same lack of standing argument that Omron raises here. We affirm because we find no abuse of discretion in the district court's analysis.

The district court provided several examples of NOV's behavior evidencing a pattern of highly questionable conduct. We agree with the district court that even if NOV had been confused about the ownership of the '142 Patent, NOV was put on notice about its potential lack of standing in October 2011, when Auto-Dril filed a motion to dismiss in the Auto-Dril case for lack of standing. In the Auto-Dril case, NOV also initially relied on the Assistant Secretary's Certificate, and NOV settled with Auto-Dril after Auto-Dril responded with the same lack of standing argument advanced by Omron here. Yet nine months after settling with Auto-Dril, NOV filed this case against Omron, without fixing the problem of a lack of written assignment of the '142 Patent from Varco, L.P. to NOV. NOV made numerous conflicting representations in this case, including stating that the ACA was not relevant

to any claim or defense in this case, or that it was cumulative and not needed, yet NOV now relies on the ACA as the purported assignment document. Even NOV's Rule 30(b)(6) designee did not know whether Exhibit A to the ACA covered the '142 Patent. We agree that NOV was aware of the "web of confusion it was weaving" as early as October 2011, more than nine months before it filed this case, yet it failed to "fill[] the void that has now consumed this matter: the absence of a written assignment, as required by law, of the '142 Patent from Varco, L.P. to NOV." J.A. 3, 22–23. Had NOV been able to fix the standing problem, "it would have done so a long time ago and certainly before August 2012," and it "at no point … even made an attempt to explain the blatant inconsistencies" in its previous positions on standing. J.A. 23. We agree and find no abuse of discretion because the district court's decision to dismiss this case with prejudice was not clearly unreasonable, arbitrary, or fanciful, or based on an erroneous conclusion of law or fact.

## IV. Motion for Attorney Fees

After the district court dismissed the case, Omron filed a motion for attorney fees and costs, which the district court granted, in part. Although the district court did not find NOV's initial filing of the lawsuit or NOV's infringement positions exceptional, it did find exceptionally unreasonable "NOV's refusal to produce the ACA when Omron specifically requested the document," and "NOV's maintaining of this lawsuit once it was clear NOV lacked standing." J.A. 55, 57.

We find no abuse of discretion in the district court's award of attorney fees. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,

134 S. Ct. 1749, 1756 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Bad faith is not necessary because "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757.

The district court acted well within its discretion in finding this case exceptionally meritless compared with mine-run cases to warrant an award of attorney fees. It found that NOV's offer of the Assistant Secretary's Certificate, a one-page document tangential to the underlying transaction, was disingenuous. It found that NOV's "legal arguments" were "remarkably weak," and "NOV offered no credible arguments to rebut Omron's grounds for dismissal." J.A. 59. It also explained that this case stood out from the many other patent cases that the district court had handled because NOV was on notice of the standing issue, yet was not forthcoming on addressing or acknowledging it, even when Omron specifically requested the ACA, and NOV intentionally withheld the ACA, unreasonably claiming it was not relevant to any claim or defense in this case.

NOV also objects to the period over which the district court awarded attorney fees. NOV seeks to reduce the attorney fees award to correspond to the total "delay" between March 17, 2014, when NOV objected to producing the ACA, and May 9, 2014, when NOV actually produced the ACA. Omron responds that the district court properly exercised its discretion to award all attorney fees starting from the date that NOV refused to produce the ACA. We agree with Omron.

The district court did not award fees for the entire litigation, but only starting from March 2014, the date of NOV's decision to withhold the ACA. NOV's subsequent production of the ACA did not cure the problem because

Case 1:12-cv-00773-SS   Document 218   Filed 01/25/17   Page 12 of 16

12                    NOV v. OMRON OILFIELD & MARINE, INC.

the ACA itself "totally undermined" NOV's position. J.A. 59. The district court aptly explained that "NOV attempted to distract the Court with extrinsic evidence but to no avail," and NOV presented "no credible arguments" "in what was not a close call." J.A. 59. We find no abuse of discretion in how the district court chose to calibrate the period of the litigation for which Omron was entitled to be awarded its attorney fees.

## V. Invalidity and Noninfringement

Because the district court properly dismissed this case based on NOV's lack of standing to assert the '142 Patent, the district court had no jurisdiction to rule on Omron's motion for summary judgment. J.A. 46. In *Steel Co. v. Citizens for a Better Environment*, the Supreme Court rejected "the position embraced by several Courts of Appeals, which f[ou]nd it proper to proceed immediately to the merits question, despite jurisdictional objections, at least where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." 523 U.S. 83, 94 (1998). The Supreme Court explained that "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Id.* "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* As explained above, NOV lacked standing to assert the '142 Patent. The district court thus lacked jurisdiction to hear the case and it was without power to reach any merits decisions. *See Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 848–49 (Fed. Cir. 2009) (vacating a district court's grant of summary judgment of invalidity and remanding with instructions to dismiss Stanford's claim for lack of standing because "the district court lacked jurisdiction over Stanford's infringement claim and should not have addressed the validity of the patents"). Therefore, we vacate the district court's

grant of Omron's motion for summary judgment of invalidity and noninfringement of the '142 Patent. J.A. 46.

## CONCLUSION

We affirm the district court's judgment that NOV lacks standing to assert the '142 Patent because the ACA did not transfer the '142 Patent from MD/Totco to NOV based on the "0" listed in Exhibit A to the ACA. Because we affirm on this basis, we need not reach the district court's additional grounds for why the ACA may not have transferred the '142 Patent to NOV. We find no abuse of discretion in the district court's dismissal of this case with prejudice or grant of attorney fees, and we affirm those decisions.

We vacate the district court's grant of Omron's motion for summary judgment of invalidity and noninfringement.

**AFFIRMED-IN-PART AND VACATED-IN-PART**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

OPINION FILED AND JUDGMENT ENTERED: 01/25/2017

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the appellant in favor of the appellee under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court

cc: Robert McGee Bowick Jr.
Kimberly Kristin Dodd
Bradford Turner Laney
Matthew B. Lowrie
John Wesley Raley III

15-1406 - National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.
United States District Court for the Western District of Texas, Case No. 1:12-cv-00773-SS

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

*Questions and Answers*

**Petitions for Rehearing (Fed. Cir. R. 40)
and
Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)**

---

*Q. When is a petition for rehearing appropriate?*

A. Petitions for panel rehearing are rarely successful because they most often fail to articulate sufficient grounds upon which to grant them. For example, a petition for panel rehearing should not be used to reargue issues already briefed and orally argued; if a party failed to persuade the court on an issue in the first instance, a petition for panel rehearing should not be used as an attempt to get a second "bite at the apple." This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36. Such dispositions are entered if the court determines the judgment of the trial court is based on findings that are not clearly erroneous, the evidence supporting the jury verdict is sufficient, the record supports the trial court's ruling, the decision of the administrative agency warrants affirmance under the appropriate standard of review, or the judgment or decision is without an error of law.

*Q. When is a petition for hearing or rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merit panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a suggestion for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow identifiable decisions of the U.S. Supreme Court or Federal Circuit precedential opinions or that the merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for rehearing granted by merits panels or petitions for rehearing en banc accepted by the court?*

A. The data regarding petitions for rehearing since 1982 shows that merits panels granted some relief in only three percent of the more than 1900 petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions were accepted less frequently, in only 16 of more than 1100 requests. Historically, the court itself initiated en banc review in more than half (21 of 37) of the very few appeals decided en banc since 1982. This sua sponte, en banc review is a by-product of the court's practice of circulating every precedential panel decision to all the judges of the Federal Circuit before it is published. No count is kept of sua sponte, en banc polls that fail to carry enough judges, but one of the reasons that virtually all of the more than 1100 petitions made by the parties since 1982 have been declined is that the court itself has already implicitly approved the precedential opinions before they are filed by the merits panel.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals. As a matter of interest, very few petitions for certiorari from Federal Circuit decisions are granted. Since 1982, the U.S. Supreme Court has granted certiorari in only 31 appeals heard in the Federal Circuit. Almost 1000 petitions for certiorari have been filed in that period.

October 20, 2016

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## INFORMATION SHEET

## FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

**Format of a Petition.** The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

**Where to File.** You must file your documents at the Supreme Court.

**Clerk**
**Supreme Court of the United States**
**1 First Street, NE**
**Washington, DC 20543**
**(202) 479-3000**

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

**Access to the Rules.** The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999